OPINION *Page 2 
{¶ 1} Appellant Richard H. Russel appeals his conviction and sentence on one count of felonious assault entered in the Stark County Court of Common Pleas.
 {¶ 2} Appellee is State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} On May 24, 2007, Peggy Mayfield, age 68, placed a 911 call requesting assistance. Officer Raymond Skillern was dispatched to 2815 25th Street N.W. in response to a domestic violence call. When he arrived, he observed Ms. Mayfield in a state of distress with marks on her body, a gash on her forehead and hurt ribs. She was also having difficulty breathing. Ms. Mayfield told Officer Skillern that she made breakfast for Appellant Richard Russel and he didn't like it. A fight ensued and Appellant hit her in the head with keys in his hand and also hit her about her body. She identified Appellant as her assailant and completed and signed Forms 2 and 2A, which Officer Skillern then used to complete his report containing a description of the assault and of her assailant. After the interview, Skillern called the police photographer, who took photographs of Ms. Mayfield. Ms. Mayfield was taken to Timken Mercy Medical Center by her family where she received treatment for her injuries.
 {¶ 4} The Stark County Grand Jury indicted Appellant on one count of felonious assault, a violation of R.C. § 2903.11(A)(1)[F2]. The charges stemmed from an assault which occurred on May 24, 2007, when Russell beat Peggy Mayfield, fracturing her ribs.
 {¶ 5} At arraignment, Appellant pleaded not guilty to the charge.
 {¶ 6} On January 22, 2008, a jury trial commenced in this matter. *Page 3 
 {¶ 7} At trial, the victim, Peggy Mayfield, was called as a "court" witness, allowing both the State and Appellant to ask her leading questions. The State called four witnesses and introduced exhibits, including the medical records of Mayfield, the 911 call made by Mayfield, and photographs of Mayfield on the day of the assault.
 {¶ 8} At the close of the State's case, Appellant made a motion for acquittal, which was denied. The defense presented no witnesses.
 {¶ 9} After hearing the evidence and receiving instructions from the trial court, the jury returned with a verdict of guilty.
 {¶ 10} The trial court sentenced Appellant to four years in prison.
 {¶ 11} Appellant now appeals to this court, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 12} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 13} "II. THE APPELANT [SIC] WAS DEPRIVED OF DUE PROCESS BY THE MISCONDUCT OF THE PROSECUTOR.
 {¶ 14} "III. THE TRIAL COURT COMMITTED ERROR AND ABUSED ITS DISCRETION WHEN IT ADMITTED A 911 TAPE INTO EVIDENCE THAT WAS NOT PROPERLY AUTHENTICATED."
 I. {¶ 15} In his first assignment of error, Appellant claims the jury verdict was against the manifest weight and sufficiency of the evidence. We disagree. *Page 4 
 {¶ 16} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 17} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 678 N.E.2d 541, 1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1. *Page 5 
 {¶ 18} Appellant argues that the State failed to adequately prove identification in the case sub judice because the victim in this case did not identify Appellant as her assailant.
 {¶ 19} At trial, the victim, Peggy Mayfield, testified that she could not recall calling the police, signing any forms or even who caused her injuries on the date in question. (T. at 67, 70, 76). The victim testified that Appellant had never been violent with her and that she was taking prescription medication that caused her to become confused. (T. at 82, 84-85). She did testify, however, that she recalled talking to Appellant in Detroit, Michigan on the date of the assault. (T. at 84).
 {¶ 20} The State, in response to the victim's testimony, presented the jury with a tape of the 911 call, photographs of the victim's injuries, the forms signed by the victim, the testimony of the responding police officer, Raymond Skillern, the emergency room nurses, Janet Laird and Heidi Wright, and the emergency room doctor, James Belleza, M.D.
 {¶ 21} Officer Skillern testified that Peggy Mayfield told him that she prepared breakfast for the Appellant who did no like the way it was cooked and that a physical altercation resulted. (T at 87,89). Officer Skillern stated that he observed some facial marks and that she claimed that her ribs hurt. (T. at 89). He further stated that Ms. Mayfield was having difficulty breathing. (T. at 89, 91). Officer Skillern stated that Ms. Mayfield told him that the Appellant was holding keys in his hand while he hit her. (T. at 91). He stated that Ms. Mayfield identified her assailant as Appellant. (T. at 92). Officer Skillern also stated that Ms. Mayfield signed a Form 2, which provides a physical description of the assailant, and a Form 2A, which contains an address and telephone *Page 6 
number, if the victim has such information, which then goes to the Detective Bureau for investigation. (T. at 92-94). Officer Skillern also identified the voice on the 911 call as that of Peggy Mayfield. (T. at 94-96).
 {¶ 22} Janet Laird, an emergency room nurse at Mercy Medical Center, testified that her duties included assessing Ms. Mayfield and taking her history upon her admittance. (T. at 104-105). Ms. Laird testified that Ms. Mayfield told her that she had been struck in the head and ribs and that the cuts were caused by her attacker having keys in his hands. (T. at 105-106). Ms. Laird stated that Mayfield told her she was assaulted by a friend who did not live with her. (T. at 106). She further testified that Ms. Mayfield's adult children were present and according to Ms. Laird, they did most of the talking after the initial interview. (T. at 107). Additionally, she stated that Ms. Mayfield did not appear to have any memory problems while talking to her. (T. at 107).
 {¶ 23} Heidi Wright, an emergency room nurse working triage, testified that Ms. Mayfield informed her that she had been a victim of domestic violence. (T. at 114). She too stated that Ms. Mayfield told her that her assailant was a friend who did not live with her. (T. at 114).
 {¶ 24} Dr. Belleza, Mayfield's emergency room doctor, testified that Ms. Mayfield had three fractured ribs. (T. at 122).
 {¶ 25} In the instant case, the jury was presented with two different versions, and chose to disregard the victim's testimony in favor of that presented by the State's witnesses. As this Court has often said, a jury is free to accept or reject any or all of the testimony of the witnesses. We afford great deference to the fact-finder's credibility determinations. See State v. Reed, 155 Ohio App.3d 435, 445,2003-Ohio-6536, *Page 7 801 N.E.2d 862. In the instant case, the jury obviously believed the State's testimony and identification of Appellant.
 {¶ 26} Upon review of the entire record in this matter, we find there was sufficient, competent, credible evidence to establish Appellant as the person who assaulted Peggy Mayfield.
 {¶ 27} We find the evidence as presented to be sufficient to support the jury's finding of guilty, and we find no manifest miscarriage of justice.
 {¶ 28} Appellant's first assignment of error is overruled.
 II. {¶ 29} In his second assignment of error, Appellant argues that prosecutorial misconduct deprived him of his right to due process. We disagree.
 {¶ 30} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, 555 N.E.2d 293, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial.Darden v. Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464,91 L.Ed.2d 144. A trial is not unfair, if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. State v.Treesh (2001), 90 Ohio St.3d 460, 464, 739 N.E.2d 749." Furthermore, both the prosecution and the defense have wide latitude during opening and closing arguments. *Page 8 
 {¶ 31} In the instant case, during closing arguments, the prosecutor made the following statement:
 {¶ 32} ". . . they are saying that the Defense is arguing, well, it wasn't his client that caused the injury. And what does he have? Well, he has Peggy Mayfield who came into court today, says she doesn't remember anything." (T. at 134).
 {¶ 33} At that time, defense counsel objected:
 {¶ 34} "I'm going to object to the idea that we're arguing that we have a burden here to argue something, to prove something." (T. at 135).
 {¶ 35} In response, the trial court sustained the objection, and informing the jury:
 {¶ 36} "The Defense does not have a burden to prove anything. The elements must be proven by the State of Ohio." (T. at 135).
 {¶ 37} Because the jury is presumed to follow the trial court's instructions, State v. Raglin (1998), 83 Ohio St.3d 253, 264, we presume that the jury followed this instruction in its deliberations and based its conviction upon the evidence alone.
 {¶ 38} We further find that Appellant has not demonstrated, but for this statement, that the outcome of the trial would have been different.
 {¶ 39} Appellant's second assignment of error is overruled
 III. {¶ 40} In his third assignment of error, Appellant argues that the trial court erred in allowing the 911 tape into evidence. We disagree.
 {¶ 41} Appellant argues that the voice on the 911 tape was never authenticated as being that of Peggy Mayfield, and that the trial court should therefore not have allowed such tape to be offered into evidence. *Page 9 
 {¶ 42} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 43} Pursuant to Evid. R. 901(B)(5), a witness may identify the voice on a telephone call when the witness testifies that he recognizes the voice on the basis of prior familiarity. The rule provides, as an example of proper authentication or identification:
 {¶ 44} "Voice identification. Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."
 {¶ 45} Before testifying to identification of the voice on the 911 telephone call, Officer Skillern testified that he spent approximately twenty minutes speaking with Ms. Mayfield in person on that day. (T. at 99). He then listened to the 911 tape and stated that he could affirmatively state that he recognized the voice on the call as that of Ms. Mayfield. Id. Taken together, these circumstances provided an ample basis for the trial court to admit the evidence under Evid. R. 901(B)(5).
 {¶ 46} Once there was a prima facie showing of identification, the ultimate question of identification was left to the jury. McCormick, Evidence (3 Ed. Cleary Ed. 1984) 698-699, Section 227. The trial court properly admitted Officer Skillern's *Page 10 
testimony on the issue of the voice identification. We do not find that the trial court abused its discretion in allowing said 911 tape into evidence.
 {¶ 47} Appellant's third assignment of error is overruled.
 {¶ 48} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
 Wise, J., Gwin, P. J., and Edwards, J., concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs assessed to Appellant. *Page 1